UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VAHRAM GRIGORYAN,

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

No.  1:26-cv-03305 TLN SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  The undersigned now finds that Petitioner's ongoing detention violates substantive due process and recommends that he be released on conditions to be determined after a meet and confer process by the parties.

I.   **Factual and Procedural History**

Petitioner is a citizen and national of Armenia.  He entered the United States without inspection but later obtained refugee status as a derivative family member of his mother.  ECF No. 1-3 at 670.  He then adjusted his status to that of a lawful permanent resident on March 19, 2009. ECF No. 7 at 14.  His father, mother, and sister are all naturalized U.S. citizens.  ECF No. 1-3 at 742-746.  He has a U.S. citizen daughter who lives with her mother. Id. at 674.

////

### A. Criminal History

Petitioner has three criminal convictions.[1]  The first was for petty theft (Cal. Pen. Code § 484(a)) in 2015, which the Los Angeles County Superior Court vacated on February 27, 2025.  ECF No. 1-3 at 748.  Next was a 2017 conviction for having a concealed carry weapon in his vehicle (Cal. Pen. Code § 25400(a)(1)). ECF No. 1-3 at 836.  Most recently, Petitioner served a prison sentence for a 2019 conviction for assault with a firearm (Cal. Pen. Code § 245(a)(2)).  On March 29, 2018, Petitioner shot his then-girlfriend, who is the mother of his child, in the shoulder.  Petitioner claims to not remember many details of this incident, as he was intoxicated at the time.  ECF No. 1-3 at 56.  The Los Angeles County Superior Court sentenced him to two years in prison for the underlying conviction and an additional four years for each of two enhancements: for inflicting great bodily injury under circumstances involving domestic violence (Cal. Pen. Code § 12022.7(e)) and use of a firearm (Cal. Pen. Code § 12022.5(a)).  ECF No. 1-1 at 597.  At some point after Petitioner's release from prison, Petitioner's sister contacted Petitioner's ex-partner—the victim of the 2018 assault—in an attempt to arrange a visit between Petitioner and his daughter.  This interaction triggered a report to law enforcement for a parole violation, but Petitioner was subsequently detained by Immigration and Customs Enforcement ("ICE").  ECF No. 1-3 at 71-77 (transcript of Petitioner describing his parole violation conduct to an IJ).

### B. Detention and Removal Proceedings

ICE officers first detained Petitioner on June 27, 2024, upon Petitioner's release from prison.  The Department of Homeland Security ("DHS") charged him as removable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii).  Specifically, they alleged that Petitioner's conviction under Penal Code § 245(a)(2) constitutes an aggravated felony "crime of violence."  ECF No. 1-2 at 175.  Thus began his labyrinthine deportation proceedings, which remain ongoing.  On December 19, 2024, Petitioner filed a motion to terminate his removal proceedings under United States v. Gomez, 115 F.4th 987 (9th Cir. 2024) ("Gomez I"), which held that a conviction under § 245(a) is categorically not a "crime of violence."  At an Immigration Court

---

[1]  Petitioner's history of law enforcement encounters includes arrests that did not lead to convictions between 2008 and 2015 relating to theft and possession of marijuana.  ECF No. 1-3 at 833-838.

hearing on January 8, 2025, DHS moved to dismiss removal proceedings, agreeing with Petitioner's motion to terminate argument.  ECF No. 1-1 at 506.  An Immigration Judge ("IJ") granted the motion to dismiss without prejudice.  ECF No. 1-2 at 286.

ICE released Petitioner on January 9, 2025. ECF No. 1-10 at 7.  Twelve days later, on January 21, 2025, ICE re-detained Petitioner and placed him in removal proceedings again, this time charging Petitioner as removable under INA §237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of two crimes involving moral turpitude—the 2018 assault with a firearm and the 2015 petty theft.  ECF No. 7 at 14-18.  That period of detention remains ongoing. As a result, with the exception of the twelve days of release in January 2025, Petitioner has spent the last two years in ICE custody.

On February 20, 2025, Petitioner filed a motion to terminate this second round of removal proceedings based on various legal theories.  ECF No. 1 at 20.  On February 27, 2025, he supplemented the motion to terminate with evidence that his 2015 petty theft conviction had been vacated.  Id.  In the supplemental filing, he argued that the vacatur eliminated the conviction for immigration purposes, and therefore the charge of removability under INA §237(a)(2)(A)(ii) could not be sustained.  Id.  IJ Bryan DePowell denied the motion to terminate on March 7, 2025, without addressing the vacatur or its effect on the charge of removability.  ECF No. 1-2 at 117. Petitioner filed a motion to reconsider the denial of the motion to terminate, which the IJ denied on March 18, 2025, again failing to address the vacatur.  Id. at 123. On April 4 and April 9, 2025, Petitioner filed interlocutory appeals of the IJ's denial of the motion to terminate and motion to reconsider to the Board of Immigration Appeals ("BIA").  ECF No. 1-1 at 288.  He also filed a third motion to terminate on April 18, 2025, on the same basis. Id. at 341.

On April 22, 2025, while the interlocutory appeals and third motion to terminate were pending, DHS filed a Form I-261, adding a second charge of removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), renewing its previously-dismissed allegation that Petitioner's 2018 conviction under § 245(a)(2) constituted an aggravated felony.  ECF No. 1-3 at 583.  DHS presumably based this new charge on the April 14, 2025, vacatur of Gomez I.  In response, Petitioner filed a fourth motion to terminate, arguing that, despite the vacatur of Gomez

I, § 245(a) is not a crime of violence, per the Supreme Court's holding in Borden v. United States, 593 U.S. 420 (2021) that a crime that can be committed with a reckless mental state is not a "crime of violence."  ECF No. 1-1 at 233.  On June 18, 2025, before the IJ's own deadline for Petitioner to file a response to DHS' opposition of the motion passed, the IJ denied the motion to terminate.  ECF No. 1-3 at 464.  Petitioner then filed his reply to DHS' opposition and a motion to reconsider the IJ's denial of the fourth motion to terminate.  ECF No. 1-3 at 458.

At a hearing on July 2, 2025, the IJ acknowledged the pending motion to reconsider and scheduled a contested removal hearing for August 20, 2025.  The next day, the IJ vacated his order denying the motion to terminate but still found that Petitioner "did not meet the burden of proving that [he] is clearly and beyond a doubt entitled to admission to the United States and is not inadmissible as charged."  ECF No. 1-3 at 386.

Sometime between July 2, 2025, and the removal hearing scheduled for August 20, 2025, the Immigration Court reassigned Petitioner's removal proceedings to another IJ, Ravit Halperin, and rescheduled the contested removal hearing to August 29, 2025.  ECF No. 1 at 26.  On August 21, 2025, IJ Halperin issued an order finding a contested removal hearing unnecessary, adopting the prior IJ's decision "on all issues in the prior [m]otion to [t]erminate," and ordering Petitioner to file applications for relief by September 8, 2025.  ECF No. 1-1 at 119.  Petitioner did not file any applications for relief, and on September 9, 2025, IJ Halperin ordered Petitioner removed from the United States.  ECF No. 1-1 at 111.

On October 1, 2025, Petitioner filed a Notice of Appeal to the BIA, challenging the IJ's removal order.  ECF No. 1-1 at 90.  To date, the BIA has neither issued a briefing schedule nor issued a decision on Petitioner's appeal.  ECF No. 1 at 27.

On January 13, 2026, the Ninth Circuit issued its *en banc* decision in United States v. Gomez, 165 F.4th 1199 (9th Cir. 2026) ("Gomez III").  In Gomez III, the Ninth Circuit applied the Supreme Court's decision in Borden and held that a conviction under § 245(a)(1) does not qualify as an aggravated felony crime of violence because it can be committed with a reckless mental state.  165 F.4th at 1203.  Based on the Gomez III decision, Petitioner filed an emergency motion to terminate with the BIA on February 2, 2026. ECF No. 1-1 at 50-87.

On March 12, 2026, DHS filed an opposition to the motion to terminate, along with yet another Form I-261, this time alleging that the enhancements under § 12022.5(a) and § 12022.7(e) in Mr. Grigoryan's § 245(a)(2) conviction support the crime of violence charge of removability.  ECF No. 1-1 at 19-32.  The BIA has not yet ruled on the emergency motion to terminate nor made any determination as to the applicability of the amended charge.

### C. Bond Hearings

Through his time in ICE detention, Petitioner filed three motions for custody redetermination and bond.  On April 1, 2025, Petitioner filed a motion for custody redetermination and bond based on several legal theories.  ECF No. 1-2 at 136-170.  The IJ denied bond with a template form, finding Petitioner was correctly categorized as mandatory detainee and, alternatively, that Petitioner did not prove that his release would not pose a danger to the community.  ECF No. 1-3 at 383.  Petitioner appealed the IJ's bond denial. ECF No. 1-2 at 9.  The BIA remanded the matter to the IJ for a more detailed explanation of his denial and ordered the IJ to certify the record back to the BIA. Id.  The IJ issued a memorandum (ECF No. 1-2 at 1-6), but Petitioner claims the IJ did not certify the matter back to the BIA.  ECF No.  1-3 at 347.

On July 22, 2025, after approximately six months of detention, Petitioner appeared at a bond hearing pursuant to Rodriguez v. Holder, No. CV 07-3239-TJH, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part, rev'd in part sub nom*.  Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom*.  Jennings v. Rodriguez, 583 U.S. 281 (2018).  The IJ denied bond again, finding the Petitioner did not demonstrate that release would not pose a danger to the community.  ECF No. 1-3 at 100.  Petitioner filed an appeal, and the BIA remanded to the IJ because the decision did "not include clear and complete factual findings and legal analysis of the issues presented."  ECF No. 11 at 8.

Petitioner filed a third bond redetermination request on February 2, 2026, after Gomez III rendered his assault conviction not an aggravated felony.  The IJ first found that Petitioner was subject to mandatory detention due to a firearm enhancement to the assault conviction. ECF No. 1-5 at 1. In an amended order, the IJ reversed his finding and determined Petitioner was not

subject to mandatory detention, but found that Petitioner would present a danger to the community if released.  ECF No. 1-6 at 1.  Petitioner did not appeal the third bond denial, as he believed doing so would not lead to timely release.  ECF No. 1 at 33.

Petitioner remains detained at the Golden State Annex Detention Center.  He reports conditions of overcrowding and poor ventilation, limited recreational and outdoor access, delayed medical care, inadequate food and water, all of which contribute to significant stress and anxiety. ECF No. 8-1

Petitioner filed the instant § 2241 petition on April 29, 2026.  He challenges ICE's detention authority under 8 U.S.C. § 1226 and alleges that the prolonged detention and denial of meaningful appellate review violate his Fifth Amendment right to procedural and substantive due process. He seeks immediate release or grant of a bond.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1226, that Petitioner has not exhausted his administrative remedies, and that continued detention does not violate substantive due process.

## II.    Legal Standards

### A.  Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law.  Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").  The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and

procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B.  Statutory and Regulatory Immigration Framework**

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226.  For those subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses and national security grounds, § 1226(c)(1)(A)-(E), and specifies that the Attorney General "may release" such a noncitizen "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk.  Jennings, 583 U.S. at 303 (emphasis in original).

////

### III.    Analysis

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).  In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)).  In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk.  Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas, 533 U.S. at 690-91); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held.  See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II").[2]  Applying these Doe v. Becerra

////

---

[2] Several judges have endorsed this framework.  See Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025); Rivas Campos v. Chestnut, No. 1:26-cv-01330 DJC SCR, 2026 WL 1816190 (E.D. Cal. June 24, 2026), adopting findings and recommendations, 2026 WL 1899541 (July 1, 2026).

II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

### A. Length of detention

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted more than 24 months,[3] which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"). The ongoing appeal of the removal order further suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while severely prolonged, the current two-year duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial

---

[3] This is the aggregate length of detention. Petitioner's first detention, from June 27, 2024, until January 9, 2025, lasted six months and thirteen days. Twelve days after release, ICE detained Petitioner again on January 21, 2025. This second detention has lasted over seventeen months.

detention as "likely approaching the outer bounds of due process."). However, Petitioner has offered ample evidence that this duration is excessive in relation to its regulatory purpose, in that Petitioner is not a flight risk and his dangerousness to society can be mitigated by alternatives to detention. The undersigned also finds that detention has become punitive, given the conditions of confinement and the government's numerous errors, changing legal theories, and delays.

### B. Government Contribution to Delay

Relevant to this analysis is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued").

The undersigned agrees with Petitioner's assertion that the government has contributed to the prolonged nature of detention due to its "repeated delays, shifting allegations, failures to acknowledge dispositive evidence, and repeated failures to provide meaningful appellate review." ECF No. 8 at 7.

After the Ninth Circuit's decision in Gomez I, the IJ dismissed proceedings and DHS promptly released Petitioner from custody. Respondents then re-detained Petitioner and charged him under 8 U.S.C § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude – the 2015 petty theft and the 2019 assault with a firearm. Shortly thereafter, Petitioner submitted evidence that the petty theft conviction had been vacated and was therefore no longer valid for immigration purposes. ECF No. 1-1 at 416.

At that point, just as they did when Gomez I negated the validity of the earlier charge of removability, DHS should have amended their position accordingly. Instead, they neither responded to the motion to terminate nor addressed the effect of the vacatur. Rather, they allowed the IJ to further contribute to the delay by denying both the motion to terminate and the motion to reconsider without considering the vacatur. The BIA worsened the delay by declining to consider Petitioner's interlocutory appeal. ECF No. 1-1 at 288. Had any of these government entities considered Petitioner's clear evidence that the charge of removability could not be

sustained, Petitioner would have been released.  Instead, while the matter remained pending on a clearly incorrect basis after the vacatur, DHS filed a third NTA based on yet another legal theory after the Ninth Circuit ordered a rehearing en banc and vacated Gomez I.  See Gomez II, 133 F.4th 1083.

The government contributed to at least two more otherwise avoidable delays in these proceedings.  The BIA had to remand both the April 3, 2025, and July 22, 2025, bond denials due to IJs' administrative errors.  See ECF No. 1-3 at 37.  See also ECF No. 11 at 8.

### C.  Evidence of Flight Risk and Danger

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community.  "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.  Nothing in the record suggests – and no IJ has found – that Petitioner is a flight risk.  This factor will therefore turn on the evidence related to whether Petitioner's release poses a danger to society.

While Petitioner's prior arrests for theft and controlled substance violations do not imply dangerousness, the 2019 assault conviction is concerning.  Petitioner admitted to shooting a firearm – one that he did not legally own – at the mother of his child, hitting her shoulder.  ECF No. 1-3 at 57, 60.  He fled the scene before turning himself in the next morning. Id. at 60-61.  Petitioner expressed remorse submitted several letters of support and certificates attempting to demonstrate rehabilitation.  ECF 1-2 at 500-618.  However, given the recency of his release from prison and the serious nature of the crime, such evidence is insufficient to demonstrate that Petitioner would no longer pose a danger to society if released without safeguards.

### D.  Alternatives to Detention

Relevant to assessing dangerousness to society is whether the government's interests in protecting the community could be protected through alternatives to detention that are less restrictive.  Doe v. Becerra II, 732 F. Supp 3d at 1080.

////

Petitioner is subject to a criminal protective order effective through April 30, 2029. He plans to live with his parents, as he is no longer romantically involved with the assault victim, who is now re-married. He also expressed willingness to be released under ICE's supervision, which may include GPS monitoring through ICE's Intensive Supervision Appearance Program (ISAP) and periodic, unannounced ICE check-ins.

Respondent argues that ICE's alternatives to detention programs are designed to mitigate flight risk and are only offered *after* a determination that the person does not pose a danger to society. While the record does not contain evidence regarding the efficacy of GPS monitoring to mitigate dangerousness, the Court in Doe v. Becerra II highlighted "studies from the criminal context suggesting that electronic monitoring can reduce recidivism" and opined that "someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." Doe v. Becerra II, 732 F. Supp 3d at 1088. Moreover, ISAP or other established ICE monitoring procedures are not the only alternatives to detention that exist. Other conditions that could mitigate danger may include but are not limited to home detention or release to a designated sponsor, prohibitions on use or possession of firearms, no-contact orders, and orders allowing re-detention if any terms of release are violated.

### E. Conditions of Detention

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). While conditions do not strongly factor towards a due process violation, the undersigned observes that Petitioner has endured restrictive conditions at each facility, including overcrowding, poor ventilation, delayed healthcare, limited outdoor and recreation time, and inadequate food and water. ECF No. 8-1. A recent study by the California Attorney General found conditions at all California facilities similar to those reported by Petitioners. The study found such conditions "cruel, inhumane, and unacceptable" and noted

////

"multiple violations of ICE's own detention standards relating to conditions of confinement." ECF No. 8-2.

### F.  Conclusion as to Substantive Due Process Analysis

Petitioner's detention in restrictive, substandard facilities has lasted over two years, at least in part due to government-caused delays.  Though Petitioner's release may pose some risk to the community, the risk can be mitigated by alternatives to detention.  On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose and therefore violates his substantive due process rights.

### IV.    Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202.  The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate danger to the community.  See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions."). Those safeguards should be addressed by the parties in the first place, as contemplated below.

////

////

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED on Count 5 (substantive due process) as follows:

   a. Within **five days** of any order adopting these Findings and Recommendations, the parties shall meet and confer and submit a joint statement regarding proposed conditions of release, which shall include GPS location monitoring and any other conditions the parties believe will mitigate the risks involved in Petitioner's release from detention.[4]

   b. Respondents be prepared to release Petitioner within **12 hours** after submission of joint statement of proposed conditions, or as soon thereafter as ordered by the Court.

2. The Clerk be directed to serve **Golden State Annex** with a copy of any order of release.

3. Any order not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

4. Judgment be entered in favor of Petitioner and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal

---

[4] The parties may refer to the district court's order in Doe v. Becerra, No. 5:23-cv-04767-PCP (N.D. Cal. May 15, 2024), ECF No. 56, for potential conditions that could be imposed by the Court.

the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 9, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE